UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN PROTECTION &
ADVOCACY SERVICE, INC.

        Plaintiff,

v.

DETROIT MEDICAL CENTER, and
DETROIT RECEIVING HOSPITAL AND
UNIVERSITY HEALTH CENTER

        Defendants.
_____/

Michigan Protection & Advocacy Service, Inc.
Chris E. Davis (P52159)
29200 Vassar Blvd., Suite 200
Livonia, MI  48152
Phone: (248) 473-2990
Email: cdavis@mpas.org
Attorney for Plaintiff
_____/

## COMPLAINT

### INTRODUCTION

1. The Plaintiff, Michigan Protection and Advocacy Service, Inc.(MPAS), brings this action for declaratory and injunctive relief pursuant to 42 U.S.C. §§ 10807-10827, the Protection and Advocacy for Individuals with Mental Illness Act of 1986 (PAIMI).

2. MPAS challenges the refusal of the defendants, the Detroit Medical Center (DMC) and Detroit Receiving Hospital and University Health Center (Detroit Receiving), to

disclose documents they claim are protected by the peer review privilege relating to the death of Patient A and the injuries suffered by Patient B and Patient C.[1]

3. MPAS is charged with the responsibility both under federal and state law to investigate allegations of abuse and neglect against persons with disabilities.

4. The Defendants' refusal to provide the documents at issue has interfered with Plaintiff's investigative responsibilities and resulted in Plaintiff being denied its rights pursuant to the PAIMI Act to investigate the suspected incidents of abuse and neglect under 42 U.S.C. § 10805(a)(1)(A).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. Plaintiff's federal claims are made pursuant to 42 U.S.C. §§ 10801-10827.

7. Declaratory and injunctive relief are authorized pursuant to 28 U.S.C. §§ 2201, 2202.

8. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b), as all of the events and omissions complained of below occurred in this district.

## PARTIES

9. The Plaintiff, MPAS, is a Michigan non-profit corporation.

10. The Governor of Michigan has designated MPAS as the state's protection and advocacy system, pursuant to MCL 330.1931 (1) with the responsibility to enforce and carry out the federal mandate under the PAIMI Act.

---

[1] The patients are being referred to as Patients A, B, and C to protect their confidentiality. Patient A's death was reported in a local television news cast but neither patient's B or C identities are known to the general public.

11. As the state's protection and advocacy system MPAS is required to and has the responsibility to investigate allegations of abuse and neglect of persons with disabilities.  MCLA 330.1931 (2).

12. Defendant Detroit Receiving is a Michigan nonprofit corporation which operates a hospital located in Detroit, Michigan, which provides medical and health-related services to the public.

13. Defendant DMC is a Michigan nonprofit corporation located in Detroit, Michigan, which provides development, planning, support and ancillary activities to a collection of medical center institutions which includes but is not limited to Detroit Receiving.

## FACTS

A.   **Factual Allegations Relating To Patient A.**

14.  On or about April 11, 2008, Patient A was admitted to the Psychiatric Crisis Intervention Center of Detroit Receiving.

15. Upon information and belief Patient A was placed in restraints at some time while at Detroit Receiving.

16. Upon information and belief on or about April 13, 2008, Patient A died while in restraints in Psychiatric Crisis Intervention Center at Detroit Receiving.

17. On or about April 17, 2008, MPAS received a complaint alleging abuse and/or neglect in relation to the death of Patient A.

18. Additionally, MPAS received additional information concerning the death of Patient A through a news report on a local Detroit television station.

19. MPAS staff determined there was sufficient information in the allegations that probable cause existed to open an investigation into whether Patient A had been subjected to abuse and/or neglect while at Detroit Receiving.

20. On October 16, 2008, Cynthia Shadeck, the MPAS advocate conducting the investigation, sent a letter to Nancy Moss, Vice President Professional Services at Detroit Receiving requesting records relating to the investigation into the alleged abuse and/or neglect.

21. In her letter Ms. Shadeck requested the following records relating to Patient A, "peer review documents, correspondence with the Bureau of Children and Adult Licensing (BCAL), correspondence with the Centers for Medicare and Medicaid Services (CMS), correspondence with the Detroit Police Department and correspondence with your accrediting body . . . also . . . any and all video, DVD and audio records . . . "

**B.     Factual Allegations Relating To Patient B.**

22. On or about June 3, 2008, MPAS received a complaint alleging Patient B had been subjected to abuse and/or neglect while at Detroit Receiving.

23. The complaint alleged that on or about February 11, 2008, Patient B suffered a broken arm while being placed in physical restraint when she was at Detroit Receiving.

24. The complaint alleged Patient B had sustained a broken arm, specifically two breaks in the upper part of the arm, and an injured possibly broken hand while Patient B was in the Psychiatric Crisis Intervention Center at Detroit Receiving.

25. MPAS staff determined there was sufficient information in the allegations that probable cause existed to open an investigation into whether Patient B had been subjected to abuse and/or neglect while at Detroit Receiving.

26. On October 17, 2008, Cynthia Shadeck, the MPAS advocate conducting the investigation, sent a letter to Nancy Moss, Vice President Professional Services at Detroit Receiving requesting records relating to the investigation into the alleged abuse and/or neglect.

27. In her letter Ms. Shadeck requested the following records relating to Patient B, "peer review documents, correspondence with the Bureau of Children and Adult Licensing (BCAL), correspondence with the Centers for Medicare and Medicaid Services (CMS), correspondence with the Detroit Police Department and correspondence with your accrediting body . . . also . . . any and all video, DVD and audio records . . . "

**C.    Factual Allegations Relating To Patient C**.

28. On or about June 13, 2008, MPAS staff received a complaint that Patient C had been physically assaulted while at Detroit Receiving.

29. Upon information and belief MPAS believe Patient C is a person with a mental illness, specifically Bi-polar disorder.

30. Upon information and belief the complaint MPAS received alleged that Patient C was transported by ambulance from Detroit Receiving to a psychiatric hospital called "Circle of Life".  Staff at Circle of Life reported that Patient C arrived at their facility in bloody clothing, specifically a hospital gown, and suffering from multiple injuries.

31. The incident alleged in complaint occurred on or about January 24, 2008.

32. MPAS staff determined there was sufficient information in the allegations that probable cause existed to open an investigation into whether Patient C had been subjected to abuse and/or neglect while at Detroit Receiving.

33. On October 17, 2008, Cynthia Shadeck, the MPAS advocate conducting the investigation, sent a letter to Nancy Moss, Vice President Professional Services at Detroit Receiving requesting records relating to the investigation into the alleged abuse and/or neglect.

34. In her letter Ms. Shadeck requested the following records relating to Patient C, "peer review documents, correspondence with the Bureau of Children and Adult Licensing (BCAL), correspondence with the Centers for Medicare and Medicaid Services (CMS), correspondence with the Detroit Police Department and correspondence with your accrediting body . . . also . . . any and all video, DVD and audio records . . . "

**D.      Factual Allegations Relating To Each of the Patients.**

35. On November 3, 2008, Patricia Leonard, Associate General Counsel, for Detroit Medical Center, responded by letter to Ms. Shadeck's letters of October 16-17, 2008.

36. In her letter, Ms. Leonard, denied the request for peer review materials for each of the patients and objected to the requests pursuant to the "Michigan Peer Review Immunity Statute, see MCL 331.533, 333.20175, 333.21515."

37. Additionally, she denied the requested surveillance tapes due to "multiple issues under HIPAA."

6

38. On December 3, 2008, in a telephone conversation between Ms. Leonard and Chris Davis, staff counsel for MPAS, Ms. Leonard repeated DMC's objection to the release of peer review materials and continued to deny the release of these records.

39. On or about December 16, 2008, DMC allowed Ms. Shadeck to view some of the requested surveillance DVD. However, DMC still refuses to provide copies of the DVD to MPAS.

## COUNT I – VIOLATION OF THE PAIMI ACT'S ACCESS TO RECORDS PROVISION

40. Plaintiff incorporates and re-alleges paragraphs 1 through 39, as if fully set forth herein.

41. MPAS as Michigan's designated protection and advocacy system has the right to access all record of individuals to which it has permission under the PAIMI Act. 42 U.S.C. §§ 10805(a)(4), 10806(b)(3)(A,B).

42. Defendants' failure to provide Plaintiff with the requested records, including peer review materials, relating to the allegations of abuse and/or neglect of Patients A - C, violates MPAS' rights under the PAIMI Act, 42 U.S.C. §§ 10801-10827.

43. Defendants' actions frustrate, impinge and prevent MPAS from meeting its responsibilities under federal and state law to investigate allegations of abuse and/or neglect of individuals with mental illness.

44. MPAS has no adequate remedy at law.

## REQUESTED RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

    A.  Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201, declaring that the Defendants' actions and failures to act violate the PAIMI Act by:

    i)  Denying the Plaintiff access to Patients A - C, records including peer review records in violation of 42 U.S.C. §§ 10805 and 10806: and

    ii)  Preventing MPAS from fully performing its statutory duty to investigate incidents of suspected abuse and/or neglect of persons with mental illness in violation of PAIMI Act, 42 U.S.C. §§ 10801 to 10827;

    B.  Enter injunctive relief on a preliminary and permanent basis, pursuant to 28 U.S.C. § 2202, requiring Defendants to provide MPAS all reports, documents, and records relating to the treatment and care of Patients A – C, including peer review records;

    C.  Retain jurisdiction over this action to ensure Defendants' compliance with the mandates of the PAIMI Act;

    D.  Award Plaintiff its costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

    E.  Order such other, further, or different relief as the Court deems equitable and just.

                                            Respectfully submitted,

Dated: January 29, 2009             s/Chris E. Davis
                                            MICHIGAN PROTECTION &
                                            ADVOCACY SERVICE, INC.
                                            Attorney for Plaintiff
                                            29200 Vassar Blvd., Suite 200
                                            Livonia, MI  48152
                                            (248) 473-2990
                                            cdavis@mpas.org
                                            P52159